1  BLANK ROME LLP
2  Jeffrey Rosenfeld (SBN 221625)
   JRosenfeld@Blankrome.com
3  2029 Century Park East, 6th Floor
   Los Angeles, CA 90067
4  Telephone: (424) 239-3400
   Facsimile: (424) 239-3434
5
6  MUKASEY FRENCHMAN LLP
   Kenneth A. Caruso (*Pro Hac Vice Application to be filed*)
7  Ken.Caruso@mfsllp.com
   570 Lexington Avenue, Suite 3500
8  New York, NY 10022
   Telephone: (212) 466-6401
9
10 Attorneys for Plaintiff
   Wagging Tails Productions, Inc.
11
12            UNITED STATES DISTRICT COURT
13
             CENTRAL DISTRICT OF CALIFORNIA
14

15 WAGGING TAILS PRODUCTIONS,      | Case No.
16 INC., a Delaware corporation,    |
                                     |
17                     Plaintiff,    | **COMPLAINT FOR:**
18 v.                                |
                                     | **(1)  Declaratory Relief**
19 WILLIAM COAKLEY, an individual,  |
20                                   | **(2)  Anticipatory Breach of Contract**
                     Defendant.      |       **(Confidentiality and**
21                                   |       **Nondisclosure Agreement)**
22                                   | **(3)  Copyright Infringement**
                                     |       **(publishing copyrighted work on**
23                                   |       **Torrent streaming computer**
                                     |       **network)**
24                                   |
25                                   | **(4)  Copyright Infringement**
                                     |       **(publishing Director's Statement)**
26                                   |
27                                   | **(5)  Unfair Competition**
28

130041687

COMPLAINT

## I.   PARTIES

1.   Plaintiff, Wagging Tails Productions, Inc. ("Wagging Tails"), is a corporation organized under the laws of the State of Delaware, with its principal place of business in Palm Beach, Florida, and is therefore a citizen of the States of Delaware and Florida.

2.   Defendant, William Coakley ("Coakley" of "defendant"), is an individual, and a citizen of the State of California.

## II.   JURISDICTION AND VENUE

3.   This Court has (a) federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, in that the copyright claims alleged in this complaint arise under the laws of the United States, including, in particular, Acts of Congress relating to copyrights, and (b) supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.   This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of interest and costs, $75,000.

5.   Venue is proper in this judicial district pursuant to: (a) 28 U.S.C. § 1391(b)(1), because the defendant is a resident of this district; (b) 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district; and (c) 28 U.S.C. § 1400(a), because plaintiff is informed and believes that defendant resides or may be found in this district.

6.   Venue is also proper because the parties to this action are parties to a written contract, which includes a provision that states: "Any dispute hereunder shall be heard only in the courts of Los Angeles County, California (state and federal) and the parties hereby consent to personal and subject matter jurisdiction in any such court." [*See* the "Certificate of Engagement," a copy of which is attached hereto as **Exhibit A**, at ¶ 11.]

### III.   FACTUAL BACKGROUND

#### A.   The Motion Picture *Runt*

7.    This action arises from defendant's work on the motion picture *Runt* (the "Picture"), and defendant's subsequent efforts to damage the commercial success of *Runt* to the detriment of Wagging Tails, and to profit by infringing on Wagging Tails' copyrights related to *Runt*.

8.    *Runt* is a 2020 American, coming-of-age drama and love story directed by Coakley, which is based on a screenplay written by Coakley with others. The Picture was screened in February 2020 at the Mammoth Film Festival, where it won the Audience Award for Best Feature Film. It was released for public distribution in September 2021. It starred the late Cameron Boyce, who tragically died from epilepsy after filming but before the Picture was "locked."

9.    Wagging Tails is informed and believes that Coakley has sought to capitalize on Mr. Boyce's death by fabricating a controversy regarding what he claims was "abuse" suffered by Mr. Boyce and others during the making of *Runt*, and then seeking financing for, and publishing, a derivative literary and/or audio-visual work depicting the purported abuse, all in violation of the contractual and intellectual property rights of Wagging Tails.

#### B.   The Certificate of Engagement

10.    On June 4, 2018, Coakley entered into the Certificate of Engagement, which is a written agreement with Runt the Film, LLC, a primary purpose of which was to provide a clean chain of title for all "Material" related to *Runt*.

   a. Section 1 of the Certificate of Engagement includes the following defined terms:

   i.   "'Company' means Runt the Film, LLC."

   ii.   "The 'Picture' means the motion picture currently entitled 'Runt.'"

iii. "The 'Material' means all literary and artistic material of every type and nature written, created, or furnished by Artist in connection with or relating to the Picture as well as the results and proceeds of Artist's services heretofore or hereafter rendered in connection with the Picture."

iv. "'Artist' means William Coakley."

b. Section 3 of the Certificate of Engagement provides that the Materials and Coakley's work on or relating to *Runt* are works for hire, and that Coakley irrevocably assigns to the Company any right he may have to such works. It states:

i. "In order to induce Company to enter into the Artist's Agreement relating to the engagement of Artist's services in connection with the Picture, and in consideration of Company agreeing to enter into the Artist's Agreement, Artist hereby agrees and confirms that the Material is created by Artist as a 'work made for hire' for Company under the U.S. Copyright Act. Accordingly, Company is the author and owner of the Material. To the extent that any of the Material shall be held not to be a 'work made for hire' under the U.S. Copyright Act, Artist hereby irrevocably assigns to Company the entire copyright and all rights in the Material throughout the world in perpetuity and consents to the further license or assignment of the copyright and any rights contained in the copyright. Company's rights hereunder shall include the exclusive right to use the Material in the Picture and to own, distribute and otherwise market and exploit the Picture and all components thereof in any manner or media (whether now known or hereafter devised)."

c. Section 5 of the Certificate of Engagement provides that Coakley has transferred all derivative rights to the Company, including rights to his name and likeness, as follows:

    i. "Artist hereby grants to Company, its successors and assigns, the irrevocable right, forever and throughout the world, to use, for no additional consideration, Artist's name, likeness, voice, and/or approved biography in connection with the production, exhibition, advertising, marketing, publicity, and other exploitation of the Picture and all subsidiary, ancillary, and derivative rights therein and thereto, including, but not limited to, soundtrack albums, publications, computer and/or interactive software, 'making of' or 'behind the scenes' films, merchandising and commercial tie-ups; provided, that in no event shall Artist be depicted as using or endorsing any product, commodity or service without Artist's prior written consent. Notwithstanding the foregoing, it is understood and agreed that Company's use of Artist's name in a billing block on any item of merchandise or other material shall constitute an acceptable use of Artist's name which shall not require Artist's consent. Any consents provided to Artist hereunder shall be exercised in good faith."

d. Section 7 of the Certificate of Engagement provides that the Company may transfer its rights thereunder.

e. The Company transferred its rights to Wagging Tails.

11. Pursuant to a Production Services Agreement, dated as of June 6, 2018, between Runt The Film LLC (the "Company") and Wagging Tails (the "PSA"), the results of all Company activities were works for hire for Wagging Tails, including, without limitation, everything under the Certificate of Engagement. Therefore,

Wagging Tails is the author and owner of, *inter alia*, all Materials and results under the Certificate of Engagement.

**C.   The NDA**

12.   On May 21, 2018, Coakley entered into a written Confidentiality and Nondisclosure Agreement (the "NDA") with the producer of *Runt*.  The producer of Runt included successors to the signatory of the NDA, which include Wagging Tails.

13.   The NDA prevented Coakley from disclosing, among other things, the identity of the financiers of *Runt*.

**D.   The Copyrights**

14.   Wagging Tails has registered copyrights for *Runt*, including the following U.S. Copyright Registrations: (i) the script of the screenplay (PAu003938253 / 2018-06-13); and (ii) the completed motion picture (PAu004101301 / 2021-09-23). Attached hereto as **Exhibits B and C** are true and correct copies of those registrations.

**E.   Coakley Threatened To Harm Wagging Tails By Publishing The Picture On Torrent Services, And Then The Picture Was So Published**

15.   On August 30, 2021, a principal of Wagging Tails received an anonymous email. The following factual contention will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: Wagging Tails is informed and believes that the August 30, 2021 email was sent by Coakley or by an agent of Coakley's, that it refers to Coakley as "our mutual friend," and that it threatens to publish the Picture online with "torrent" streaming services if Coakley's demands are not met. Coakley's demands, at that time, included funding for a new pilot project, distinct from *Runt*. The email states: "Took a minute but I got 4k file of youre [sic] movie scrubbed and no watermark to torrent online all over the world all month long leading up to the release [link included.] ¶

You fucked over our mutual friend to make this movie. You deserve to lose a lot of money on it if you don't still save our friends [sic] career with a deal to make that pilot we were helping on when you cancelled it. Except now you have to act fast since unless I hear by next weekend the pilot is back on and our friend can move back home believe me I'm going to set your movie to torrent 24-7. . . ."

16. Thereafter, as threatened in the August 30, 2021 email, the Picture appeared on multiple torrent services where viewers could download and copy the Picture for free, which a number of users did.

17. Coakley had the ability to carry out his threat to publish the Picture, because as director he had access to an electronic copy of the Picture before the release of the Picture to the general public.

18. The following factual contention will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: Coakley caused the Picture to be, and/or was responsible for the Picture being, uploaded to the torrent service, and thereby, intentionally and/or otherwise, caused damages to Wagging Tails.

19. Wagging Tails is informed and believes that the release of the Picture through file sharing services was intended by Coakley to, and did, cause damage to Wagging Tails by decreasing the profitability of the Picture by an amount substantially greater than $75,000, because viewers were able to download and view the Picture for free.

**F.  The Director's Statement**

20. In September 2021, just before the publication of *Runt* by release to general audiences, Coakley published what he claimed to be a "Director's Statement" regarding *Runt*. He wrote, *inter alia*: "Unfortunately, we had not yet completed filming everything that was needed. And at the point he passed away, Cameron and I both believed the film was unfinished, unethical and, without substantial reshoots, should not be released."

7
COMPLAINT

21.  Coakley also wrote in the Director's Statement that: "One of our investors turned out to be especially toxic, wreaking unexpected havoc from day one, including regular tirades and threats to shut everything down, which caused non-stop creative, crew and production problems."

22.  Coakley further wrote in the Director's Statement that the making of *Runt* included "pervasive bullying, harassment, sexual harassment . . . and even an incident of coerced sexual misconduct."

23.  Coakley was asked to provide evidence to support his claims, so that those claims could be investigated, but he failed and refused to do so. As a result, Wagging Tails is informed and believes that Coakley lacks evidence for the statements that he made in the Director's Statement, and that those statements are instead fabricated, and written for the purpose of harming Wagging Tails.

24.  On December 2, 2022, Wagging Tails filed a copyright application for the Director's Statement, which listed Coakley as an author and Wagging Tails as the claimant by written agreement. The written agreements on which Wagging Tails bases its claims of ownership are the Certificate of Engagement and the PSA. The U.S. Copyright Registration Number for the Director's Statement is TX 9-200-030. A copy of that registration statement is attached as **Exhibit D.**

25.  Wagging Tails is informed and believes that Coakley's release of the Director's Statement was intended by Coakley to, and did, decrease the profitability of the Picture by an amount substantially in excess of $75,000.

**G.  Coakley's Failed Efforts To Use Self Help To Avoid The NDA Through Courts In New York**

26.  On May 17, 2022, Coakley, pro se, filed an action against Wagging Tails' assignor and others in the Supreme Court of the State of New York, County of New York (the "New York Action"), seeking a declaratory judgment that the NDA is invalid and unenforceable. In his Complaint (the "New York Complaint"), however, Coakley engaged in what the New York Court later held "amounts to

COMPLAINT

improper self-help." **Exhibit E at p. 3.** Specifically, the New York Complaint made public disclosure of information that was confidential under the NDA, including allegations regarding what Coakley claims occurred behind the scenes during the production of *Runt*. Such disclosures in a pleading were arguably protected by a privilege against defamation. The New York Complaint then sought, retroactively, a judgment authorizing the very disclosure that the New York Complaint had already made.

27.  Two media outlets then published Coakley's story, reporting and quoting extensively from the New York Complaint. Coakley thereby achieved the publication of his allegations, without a court order holding the NDA invalid or unenforceable, and arguably without exposure to a claim for defamation. Coakley then sought to discontinue the New York Action.

28.  The defendants in the New York Action moved to dismiss the action and for an order directing Coakley to file a redacted complaint. The defendants later moved for an award of costs, in the form of attorneys' fees, on the ground that Coakley had engaged in "frivolous conduct," defined under New York law (for this purpose) as conduct "undertaken primarily . . . to harass or maliciously injure another[.]" 22 N.Y.C.R.R. § 130-1.1(c).

29.  On October 14, 2022, the New York Court issued a Decision and Order on Motion (the "Decision"), filed on October 17, 2022, which granted the defendants' motion to dismiss the Complaint, granted the defendants' motion for redactions to the New York Complaint, and granted the defendants' motion for an award of costs in the amount of their reasonable attorney fees. A copy of the Decision is attached as **Exhibit E.** The Court held, among other things: "A party that unilaterally discloses confidential information may be found to have abused the judicial process[;]" Coakley's "use of an unredacted complaint to air out confidential information protected by a valid NDA, without providing reasons for its invalidity, is antithetical to party fairness . . . . prejudicing defendants[;]" Coakley's

"graphic, inappropriate and voluminous text messages to defendants bear out a history of vexatious harassment that eventually culminated in this suit[;]" Coakley engaged in "an ugly attempt to injure [and] instigated . . . a malicious cyber-attack against the defendants, their daughter and members of their community[;]" "the court is persuaded that in choosing to commence this litigation, [Coakley] sought only to advance his months-long crusade to 'harass [and] maliciously injure' defendants. It is precisely this sort of behavior that this court should condemn and deter[;]" Coakley's "publication of information potentially within the scope of the NDA, although legally privileged against a suit for defamation or the like, amounts to improper self-help. . . . To avoid prejudice to defendants from plaintiff's improper conduct, the complaint should, as defendant requests, be redacted to remove that information."

30.    The New York Court now has before it further proceedings to fix the amount of the defendants' reasonable attorneys' fees and to specify the redactions to be made in the New York Complaint.

31.    Wagging Tails is informed and believes that Coakley filed the New York Action not only for the purpose of harassing and maliciously injuring the defendants named in the New York Action but also for the purpose of generating public controversy over the Picture, and putting into the public domain information protected by the NDA, all as part of Coakley's efforts to finance and distribute the production of a derivative work based on the Picture, which, as alleged below, Coakley has threatened to make.

**H.    Coakley Threatens To Produce And Publish A Derivative Work, Based On The Making Of *Runt***

32.    On October 4, 2022, Coakley posted on his Instagram account, "Over the coming weeks and months, I'll finally be able to share the details of a new project inspired by the tragic cycle of trauma, grief and abuse that played out during the writing, production and release of @runtmovie... turning a passion project about

the neglect and mistreatment of kids into a project where kids were used and mistreated."

33.   Wagging Tails is informed and believes that the "new project" to which Coakley refers in his post is, or will be, a derivative work based on *Runt*, which does or will prominently feature Coakley's fabricated claims (made in the Director's Statement, the New York Action, and elsewhere), of "abuse" that allegedly occurred behind the scenes during the filming of *Runt* (the "Derivative Work").

34.   If Coakley were to publish the Derivative Work, he would violate Wagging Tails' exclusive rights under 17 USC § 106(2) to prepare derivative works based upon the copyrighted work.

35.   The Derivative Work would also breach the NDA.

36.   Pursuant to the Certificate of Engagement, Wagging Tails would own the copyright for the Derivative Work, if created.

37.   Any use of the Derivative Work, including the provision of a script to production studios, financiers, or actors, would cause irreparable damage to Wagging Tails.

38.   For the foregoing reasons, Wagging Tails is entitled to an injunction, preventing Coakley from seeking finance for, filming, producing, or distributing any Derivative Work that is based on *Runt*, including any real or fabricated stories about the making of the movie.

**I.   Coakley Threatens To Publish An Additional Director's Statement**

39.   On December 22, 2022, Coakley sent an email to a principal of Wagging Tails, in which Coakley wrote that he was "Compiling a thorough document dump to accompany a thorough update to my Director Statement . . . . No happy endings here."

40.   Wagging Tails is informed and believes that the email by Coakley was a threat to publish another director's statement (the "Additional Director Statement") which, like his previous one, would be derived from the Picture.

41.   Pursuant to the Certificate of Engagement, Wagging Tails would own the copyright for the Additional Director's Statement, if created.

42.   Any publication of the Additional Director's Statement – on social media or otherwise, in whole or in part (including if published in a series of small snippets) – would violate Wagging Tails' exclusive right to prepare derivative works based upon the copyrighted work.

43.   Any use of Additional Director's Statement would also breach the NDA.

44.   Any use of the Additional Director's Statement, including publishing it, would cause irreparable damage to Wagging Tails.

45.   For the foregoing reasons, Wagging Tails is entitled to an injunction, preventing Coakley from publishing the Additional Director's Statement.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment)**

46.   Wagging Tails hereby incorporates by reference paragraphs 1 through 45, above.

47.   An actual controversy has arisen and now exists relating to the rights and duties of Coakley pursuant to the written Certificate of Engagement and the NDA, and specifically with respect to what constitutes, and who would own and control, any Derivative Work or any Additional Director's Statement by Coakley.

48.   If Coakley has created or creates any literary and artistic material relating to *Runt*, including any work that purports to be a "making of *Runt*," a "behind the scenes of *Runt*," a story of Coakley's life to the extent it involves his work on *Runt*, an Additional Director's Statement, and/or any literary and artistic material relating to any information protected by the NDA, then, pursuant to the Certificate of Engagement, Wagging Tails would be entitled to register the copyright of such a work, and to control, limit, and prevent its distribution.

49.   Wagging Tails is informed and believes, and thereon alleges, that Coakley has taken the position that he would own the copyright to any such Derivative Work or Additional Director's Statement, and would be able to control its distribution and to profit from it, and that he will make, or has already made, a "new project inspired by the tragic cycle of trauma, grief and abuse that played out during the writing, production and release of @runtmovie," and/or an Additional Director's Statement.

50.   Wagging Tails seeks a judicial declaration that it has the right to register the copyright of any Derivative Work and/or any Additional Director's Statement created by Coakley related to *Runt*, including any "new project" created by Coakley that was inspired by the writing, production, and release of *Runt*.

## SECOND CLAIM FOR RELIEF
### (Anticipatory Breach of Contract – The NDA)

51.   Wagging Tails hereby incorporates by reference paragraphs 1 through 45, above.

52.   Coakley is a party to the written NDA, as alleged above, and Wagging Tails is the assignee of the rights of the counterparty to the NDA.

53.   Wagging Tails is informed and believes that Coakley has expressly or implicitly repudiated the NDA. First, Coakley engaged in what the Court in the New York Action described as "self-help," by publishing in that action information that had been subject to the NDA. The harm caused by such actions will be mitigated by the Court in New York ordering the New York Complaint to be redacted.

54.   Wagging Tails is also informed and believes that Coakley intends to breach the NDA further, (a) by publishing the Additional Director's Statement, and (b) in connection with the Derivative Work, by, among other things, seeking financing for the project, hiring actors and crew, and promoting the project.

55.   If Coakley is not enjoined, then he will continue to publish information that he agreed, under the NDA, to keep confidential.

56.   The NDA entitles Wagging Tails to monetary damages and injunctive relief to prevent disclosure of confidential information.

57.    Breach(es) of the NDA would result in money damages in an amount that exceeds $75,000 and would entitle Wagging Tails to an injunction, including injunctive relief preventing any threatened publication, in whole or in part.

## THIRD CLAIM FOR RELIEF
### (Copyright Infringement)
### (Publishing *Runt* on Public Computer Network)

58.   Wagging Tails hereby incorporates by reference paragraphs 1 through 45, above.

59.   The Director's Statement is an original work that is subject to copyright protection.

60.   Wagging Tails has given formal notice of copyright protection for the Picture by registering the Picture with the U.S. Copyright Office: (i) Dramatic Work and Music, or Choreography (PAu003938253 / 2018-06-13) on the redacted pre-existing screenplay; and (ii) videodisc (PAu004101301) on the finished film; and (iii) electronic file (PAu003938253) on the unredacted pre-existing screenplay.

61.   Wagging Tails is informed and believes that Coakley has infringed Wagging Tails' exclusive right to publish the Picture, by making the work available to the public on a computer network, with knowledge that Wagging Tails intended to distribute the Picture commercially at the time Coakley caused it to be published.

62.   Wagging Tails has requested that various computer networks remove the Picture, on the grounds that its publication violates the copyright held by Wagging Tails.

63.   Wagging Tails is entitled to damages in an amount according to proof, and an injunction preventing Coakley from further publishing of the Picture.

# FOURTH CLAIM FOR RELIEF
## (Copyright Infringement)
## (The Director's Statement)

64.    Wagging Tails hereby incorporates by reference paragraphs 1 through 45, above.

65.    The Director's Statement is an original work that is subject to copyright protection.

66.    Wagging Tails has given formal notice of copyright protection by registering the Director's Statement with the U.S. Copyright Office.

67.    Wagging Tails has given Coakley notice of the copyright.

68.    Coakley has thereafter published the Director's Statement on social media, thereby infringing Wagging Tails' exclusive right to publish the Director's Statement.

69.    Wagging Tails is informed and believes that Coakley published the Director's Statement because he seeks a commercial advantage, or private gain, including seeking financing or building an audience for the Derivative Work.

70.    Wagging Tails registered the copyright of the Director's Statement on December 2, 2022, and it has been assigned U.S. Copyright Registration Number TX 9-200-030.

71.    Wagging Tails has requested that various social media outlets remove the Director's Statement, on the grounds that its publication violates the copyright owned by Wagging Tails.

72.    Coakley has infringed on Wagging Tails' copyright, by continuing to publish the Director's Statement without Wagging Tails' permission.

73.    Coakley has also threatened to infringe further on Wagging Tails' copyright by publishing the Additional Director's Statement.

74.    Wagging Tails is entitled to damages in an amount according to proof, and an injunction preventing Coakley from further publishing the Director's

Statement and from publishing the Additional Director's Statement, in whole or in part.

### FIFTH CLAIM FOR RELIEF

### (Unfair Competition; Cal. Bus. & Prof. Code § 17200-17203)

75. Wagging Tails hereby incorporates by reference paragraphs 1 through 45, above.

76. Wagging Tails is informed and believes that Coakley has engaged in unfair competition, by creating a Derivative Work that will deceive the general public into believing that the work was authorized by Wagging Tails.

77. Wagging Tails is entitled to injunctive relief preventing such acts.

### PRAYER FOR RELIEF

Plaintiff prays for judgment against defendant as follows:

A. Temporary and permanent injunctive relief, preventing Coakley and/or his agents from publishing and/or attempting to publish any derivative work, including but not limited to any Making of Runt work, the Director's Statement, or any Additional Director's Statement;

B. Damages according to proof;

C. Reasonable attorneys' fees, according to proof;

D. Costs of suit, according to proof; and

E. Any other relief that the Court deems appropriate.


DATED:  December 23, 2022      BLANK ROME LLP


By: _____

Jeffrey Rosenfeld
Attorneys for Plaintiff Wagging Tails
Productions, Inc.

16

COMPLAINT