BLANK ROME LLP
Jeffrey Rosenfeld (SBN 221625)
Jeffrey.Rosenfeld@Blankrome.com
Jessica A. McElroy (SBN 299919)
Jessica.McElroy@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone: (424) 239-3400
Facsimile: (424) 239-3434

MUKASEY FRENCHMAN LLP
Kenneth A. Caruso (admitted *pro hac vice*)
Ken.Caruso@mfsllp.com
570 Lexington Avenue, Suite 3500
New York, NY 10022
Telephone: (212) 466-6401

Attorneys for Plaintiff Wagging Tails Productions, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WAGGING TAILS PRODUCTIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM COAKLEY, an individual,<br><br>Defendant. | Case No. 2:22-cv-09329-JAK-AFM<br><br>Assigned to the Hon. John A. Kronstadt<br><br>**PLAINTIFF WAGGING TAILS PRODUCTIONS, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT [ECF 29] AND RESPONSE TO COURT ORDER [ECF-31]**<br><br>Complaint Filed: December 24, 2022<br><br>Hearing Date:  March 20, 2023<br>Hearing Time:  8:30 a.m.<br>Ctrm:  10B |

WAGGING TAILS' SUPPLEMENT TO ECF-29 AND RESPONSE TO ECF 31
165319.00602/130661023v.9

# **TABLE OF CONTENTS**

Page

I. GRANTING THE MDJ WOULD MOOT THE APPLICATION .................. 1

II. THE CHARACTERS OF RUNT, AND THE THEME OF SEXUAL ABUSE, PARALLEL THE CHARACTERS AND THEME IN THE NEW WORK THAT COAKLEY IS ON THE VERGE OF PUBLISHING ............ 1

III. THE COURT SHOULD ENTER A DEFAULT JUDGMENT ...................... 2

    A. Plaintiff Is Entitled To A Declaratory And Injunctive Relief ............... 2

    B. Plaintiff Is Entitled To Judgment For Anticipatory Breach .................. 4

    C. Defendant Has No Meritorious Copyright Defense ............................ 6

        1. Plaintiff Registered The Director Statement And Has The Right To Register The Additional Director Statement ......................... 6

        2. Defendant Has Not Engaged In Fair Use ................................... 9

        3. Defendant Cannot Profit From The Unauthorized Work .......... 10

IV. INJUNCTIVE RELIEF IS WARRANTED ................................................. 11

    A. The Relief Sought Does Not Violate Public Policy ............................ 12

    B. Plaintiff Would Suffer Irreparable Harm Absent An Injunction .. **Error! Bookmark not defined.**

    C. An Injunction Would Not Be An Impermissible Prior Restraint ........ 12

V. CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ............................................................................. 15

*Aguilar v. Avis Rent A Car Sys., Inc.*,
  21 Cal. 4th 121 (1999) ......................................................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 6

*Balboa Island Vill. Inn, Inc. v. Lemen*,
  40 Cal. 4th 1141 (2007) ....................................................................................... 13

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ............................................................................................... 9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
  447 U.S. 557 (1980) ............................................................................................. 13

*City of Erie*, Pa.,
  853 F.2d 1084 (3d Cir. 1988) .............................................................................. 14

*Cohen v. Cowles Media Co.*,
  501 U.S. 663 (1991) ............................................................................................. 15

*Danning v. Lavine*,
  572 F.2d 1386 (9th Cir. 1978) ............................................................................... 6

*Denson v. Donald J. Trump for Pres., Inc.*,
  530 F. Supp. 3d 412 (S.D.N.Y. 2021) ................................................................... 5

*Dr. Seuss Enters. v. Penguin Books USA, Inc.*,
  109 F.3d 1394 (9th Cir.1997) .............................................................................. 15

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ........................................................................ 1, 2

*Harper & Row Pub., Inc. v. Nation Enters.*
  471 U.S. 539 (1985) ............................................................................................... 9

*In re R. M. J.*,
  455 U.S. 191, 102 S. Ct. 929 (1982) ................................................................... 14

*In re Steinberg*,
  148 Cal.App.3d 14 (1983) ................................................................................... 14

*ITT Telecom Prods. Corp. v. Dooley*,
  214 Cal. App. 3d 307 (1989) .................................................................................. 14

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 ........................................................................................................ 13

*McGucken v. Pub Ocean Ltd.*,
  42 F.4th 1149 (9th Cir. 2022) ................................................................................. 10

*Micro Star v. Formgen Inc.*,
  154 F.3d 1107 (9th Cir. 1998) .................................................................................. 8

*Monge v. Maya Mags., Inc.*,
  688 F.3d 1164 (9th Cir. 2012) .................................................................................. 9

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
  No. 15-cv-03522-WHO, 2016 U.S. Dist. LEXIS 14485
  (N.D. Cal. Feb. 5, 2016) ............................................................................. 6, 14, 15

*Novelty Textile, Inc. v. Windsor Fashions, Inc.*,
  No. CV1205602BROMANX, 2013 WL 12114062
  (C.D. Cal. Aug. 21, 2013).......................................................................................... 7

*Ostergren v. Frick*,
  No. 1:19-cv-139, 2020 U.S. Dist. LEXIS 54699 (W.D. Mich. Mar. 30, 2020)... 14

*Sega Enterprises Ltd. v. Accolade, Inc.*,
  977 F.2d 1510 (9th Cir. 1992) ................................................................................ 10

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) .................................................................................. 1

*Twentieth Century Fox v. Riquelme*,
  2017 WL 8231046 (C.D. Cal. Nov. 3, 2017) ........................................................... 2

*ZAG America, LLC v. Harsymets*,
  2022 WL2784814 4 (C.D. Cal. June 3, 2022)......................................................... 2

**Statutes**

17 U.S.C. § 101..............................................................................................................8, 10

17 U.S.C. § 204(a) .............................................................................................................. 7

California Code of Civil Procedure 1002 ........................................................................ 12

**Other Authorities**

NIMMER ON COPYRIGHT § 2.12 at 2–178.31 to 2–178.32 (rev. ed. 2009) ......... 8

**Rules**

Fed.R.Civ.P. 55.................................................................................................................. 1

# SUPPLEMENTAL BRIEF

The Court, by order dated February 21, 2023 [the "Order," ECF 31], asked plaintiff, Wagging Tails Productions, Inc. ("Wagging Tails"), to address the following issues in connection with its *Ex Parte Application for Temporary Restraining Order and Issuance of Order to Show Cause Re Preliminary Injunction* [the "Application," ECF 12] and its Motion for Default Judgment and Permanent Injunction [the "MDJ," ECF 29].

## I.   GRANTING THE MDJ WOULD MOOT THE APPLICATION

The Application sought temporary relief, to preserve the *status quo* during the pendency of this action. Defendant, William Coakley ("Coakley), however, allowed entry of default against him, which will lead to entry of judgment sooner than originally anticipated, thereby mooting the Application. This brief therefore addresses the issues raised by the Order as they affect the MDJ under Fed.R.Civ.P. 55 and *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## II.   THE CHARACTERS OF *RUNT,* AND THE THEME OF SEXUAL ABUSE, PARALLEL THE CHARACTERS AND THEME IN THE NEW WORK THAT COAKLEY IS ON THE VERGE OF PUBLISHING

*Runt* used fiction to address the issue of sexual assault in high school. The male lead character, played by Cameron Boyce, witnessed the sexual assault of the female lead character, played by Nicole Berger. After the assault, the plot develops around whether and how the male lead would address the assault. The possibilities ranged from reporting it, to taking matters into his own hands as a vigilante and killing the perpetrator. The film ends ominously, with police sirens.

The new work by Coakley is "strikingly similar" to *Runt*. Cf., *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). It uses the same characters (played in *Runt* by Boyce and Berger) to convey the same message about abuse. The minor differences are that the abuse occurs on a film set instead of a school, and with Boyce now deceased, Coakley himself takes on the role of vigilante.

1  Indeed, Coakley has written stories about exacting revenge by inducing Nicole
2  Berger's suicide. The characters, theme, inciting event, and climactic moment all
3  track the original. Coakley has, in effect, prepared a treatment for his film,
4  published movie posters, and said his film is in production.
5      The problem for Coakley is that he sold the rights to create a story based on
6  *Runt*. He does **not** have the right to renege on that sale and create another such story
7  or screenplay, which he can sell a second time.
8  **III.    THE COURT SHOULD ENTER A DEFAULT JUDGMENT**
9      The Order did not address the first *Eitel* factor, or the fourth through the
10 seventh *Eitel* factors. The Order, however, did analyze issues that go to the second
11 and third *Eitel* factors, which Wagging Tails addresses below. The Court should
12 grant the MDJ, because "if the [Complaint] is sufficient, Plaintiffs' substantive
13 claims have merit for purposes of a request for the entry of a default judgment."
14 *Twentieth Century Fox v. Riquelme*, 2017 WL 8231046, at *3 (C.D. Cal. Nov. 3,
15 2017); *ZAG America, LLC v. Harsymets*, 2022 WL2784814, at *4 (C.D. Cal. June
16 3, 2022).
17      **A.    Plaintiff Is Entitled To Declaratory And Injunctive Relief**
18      Wagging Tails' first claim seeks declaratory relief, which was not addressed
19 in the Application or the Order. In hindsight, however, the Application may have
20 been better formulated if it had addressed the interplay among the theme of sexual
21 abuse in the motion picture *Runt*, the certificate of engagement ("CofE"), the
22 nondisclosure agreement (the "NDA"), and copyright law, as alleged in that claim.
23      The **NDA** addresses ***factual information*** regarding the financing and making
24 of *Runt*. Coakley agreed to keep confidential "the identities of Producer's ultimate
25 principals and financiers and all tangible and non-tangible materials in which such
26 information is contained." [ECF 29-15 (the NDA) at ¶ 2.] After this action was
27 filed, Coakley published his "Amended Director's Statement," in which he wrote:
28 "Runt was financed by [names omitted]." [ECF 29-13.] (The brackets in this brief,

and redactions in the exhibit, are used to maintain confidentiality consistent with the NDA.) Coakley published the names in breach of the NDA.

The **CofE** addresses Coakley's sale of *creative works*, including the story *Runt* and any work based on *Runt* that Coakley might later create. Such a sale is not unusual in purchasing a story and producing a film, because it gives the purchaser control over sequels and other future, related works by the author. When Coakley sold *Runt*, he also sold "all literary and artistic material of every type and nature written, created, or furnished by [Coakley] in connection with or relating to the Picture as well as the results and proceeds of [Coakley's] services heretofore or hereafter rendered in connection with the Picture." [*Runt*.] [ECF 29-16 (the CofE) at ¶ 2.] Coakley also agreed: "To the extent that any of the Material shall be held not to be a 'work for hire' under the U.S. Copyright Act, [Coakley] hereby irrevocably assigns to [Wagging Tails] the entire copyright and all rights in the Material throughout the world in perpetuity and consent to the further license or assignment of the copyright and any rights contained in the copyright." [*Id.* ¶ 3.] If Coakley had wanted to reserve for himself the right to produce a future story based on or related to the Picture, then he could have sought to negotiate such rights, but he did not. Coakley sold the rights to future works, and Wagging Tails acquired them by contract. Wagging Tails registered the copyright to the text of the story of *Runt* by written agreement, [ECF 29-18]; the motion picture as a work for hire, [ECF 29-19]; and the text of the Director's Statement by written agreement, all pursuant to the CofE [ECF 29-21].

**Copyright Law** protects original works of authorship, giving the owner the right to control and exploit those works, including the right to assign the rights to such works. There is no question that Wagging Tails owns the copyright to the movie *Runt* and can control the publication of that work.

Here, the NDA, the CofE, and copyright law all converge in the claim for declaratory relief against what Coakley has described as his "new project inspired

3

by the tragic cycle of trauma, grief and abuse that played out during the writing, production and release of @runtmovie... turning a passion project about the neglect and mistreatment of kids into a project where kids were used and mistreated." Thus, as the Complaint alleges: "An actual controversy has arisen and now exists relating to the rights and duties of Coakley pursuant to the written Certificate of Engagement and the NDA, and specifically with respect to what constitutes, and who would own and control, any Derivative Work or any Additional Director's Statement by Coakley." [ECF 1 (Complaint) ¶ 47.]

Coakley uses copyrighted materials from *Runt* to promote his forthcoming picture, including a movie poster he created using photographs of Cameron Boyce and Nicole Berger from the original film *Runt,* and to obtain financing for his forthcoming picture, or in his words "muster some grassroots support to show the producer who made me the offer." [*See, e.g.,* ECF 29-10.] Most recently, Coakley writes that he has made a deal selling his "journey to get RUNT made, last week I completed and turned over my detailed personal account and initial narrative contribution that kicks the project in to script phase." [ECF 29-14.]

The undisputed evidence, from Coakley's own words and pictures, demonstrates that Coakley created a work based on and related to *Runt*. Wagging Tails seeks declaratory relief that it has, pursuant to the CofE, the right to register the copyright of that work because, when Coakley sold *Runt,* he also sold the right to register the copyright to his future works that relate to *Runt*. To the extent that work includes factual information protected by the NDA – "the identities of Producer's ultimate principals and financiers" – then Wagging Tails is entitled to an injunction preventing the publication of that information. Declaratory relief is needed to clarify the contractual duties of the parties with respect to the "new project."

### B.     Plaintiff Is Entitled To Judgment For Anticipatory Breach

The Court's Order addressed likelihood of success on the claim for

anticipatory breach, but the MDJ presents a different question—whether, taking the allegations as true, the Complaint states a claim. The answer is yes.

First, the Court indicated, and Wagging Tails agrees, that "[a]n injunction could issue based on a narrow application of the NDA[,]" which "limit[s] the restricted 'Confidential Information' to 'the identities of Producer's ultimate principals and financiers, to the extent that such identities are revealed to Defendant by the Producer.'" [ECF 31 at 12.]

Second, Wagging Tails contends that the NDA, by its terms, also covers other Confidential Information Coakley learned in connection with making *Runt*, such as the use of special effects. This reading of the NDA does not, as the Court previously stated, leave the NDA "vague and overbroad[,]" [ECF 31 at 12], or extend the NDA to "information of any nature that Defendant receives from any person regarding any topic." *Id.* Rather, this reading limits the NDA to certain nonpublic information Coakley received while working on the set of Runt. Coakley agreed to keep that information confidential, but instead he is using it, including the names of the financiers of *Runt*, to make a new project that breaches the NDA.

This is not a case like *Denson v. Donald J. Trump for Pres., Inc.*, 530 F. Supp. 3d 412, 433 (S.D.N.Y. 2021), in which the contracting party had "no way of [knowing] what may be disclosed, and . . . not free to speak about anything concerning the Campaign[.]" [*See* ECF 31, p.12.] To the contrary, the NDA covers specific information, including "the identities of the ultimate principals of Producer and financiers of the Picture," and information learned on the film set, during production, and "after the execution of [the NDA]" that Coakley learned by hearing or reading the words of others, and by observing events. The NDA does not, however, extend to "information of any nature that Defendant receives from any person regarding any topic." [ECF 31, p.12.] Rather, it is limited to particular topics. Coakley was free to (and encouraged to) report abuse to the Producers, directly or through a mediator. He had the right to report abuse to authorities.

Coakley, however, had no right to disclose Confidential Information, like the identities of the ultimate financiers of the film, on Instagram or in a new movie.

Coakley's claims of abuse do not abrogate Coakley's duties under the NDA. *See Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-cv-03522-WHO, 2016 U.S. Dist. LEXIS 14485, at *71-72 (N.D. Cal. Feb. 5, 2016) ("Defendants' purported desire to disclose the NAF recordings to law enforcement does not obviate the confidentiality agreements for all purposes. At most, defendants might have a defense to a breach of contract claim based on production of NAF materials to law enforcement."). Here, Coakley was asked to provide evidence of abuse so that his claims could be investigated, but he refused to do so. [ECF 1 (Complaint) ¶ 23; ECF 19-5 (Berger Decl. of 2/13/2023) ¶ 9.] The inference naturally and readily follows: Coakley fabricated his allegations for the purpose of funding and creating a new fictional work based on *Runt,* using the same themes as the story he sold.

On Wagging Tails' reading, the NDA would not, as the Court previously stated, "prohibit[] Defendant from discussing any aspect of the Picture that [Plaintiff] deems confidential[,]" such as "alleged sexual harassment that Defendant may not have reasonably have anticipated would be covered by the NDA or disclosed pursuant to the NDA." [ECF 31 at 12.] It is the identity of the ultimate financiers and filmmaking techniques that are confidential. Coakley's contracts prevent him from creating a fictionalized account of abuse using *Runt*'s characters, financiers, and themes. Default judgment should be entered because the allegations state a claim upon which relief can be granted, *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978), by "cross[ing] the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

  **C.**  **Defendant Has No Meritorious Copyright Defense**

    **1.**  **Plaintiff Registered The Director Statement And Has The Right To Register The Additional Director Statement**

*First,* Wagging Tails registered its copyright of the Director's Statement,

which establishes a presumption of ownership. Defendant then failed to "offer some evidence or proof" to rebut that presumption. [ECF 31 at 16.] *See, e.g.*, *Novelty Textile, Inc. v. Windsor Fashions, Inc.*, No. CV1205602BROMANX, 2013 WL 12114062, at *5 (C.D. Cal. Aug. 21, 2013).

*Second,* the Court analyzed the question of whether the Director's Statement was a work for hire under § 101 of the Copyright Act. Wagging Tails, however, registered the copyright pursuant to a valid *written assignment*. Paragraph 3 of the CofE, says:

> To the extent that any of the Material shall be held not to be a "work made for hire" under the U.S. Copyright Act, Artist hereby irrevocably assigns to Company the entire copyright and all rights in the Material throughout the world in perpetuity and consent to the further license or assignment of the copyright and any rights contained in the copyright. Company's rights hereunder shall include the exclusive right to use the Material in the Picture and to own, distribute and otherwise market and exploit the Picture and all components thereof in any manner or media (whether now known or hereafter devised). (Emphasis added)

This language constitutes a valid assignment under the Copyright Act of all rights in and to the Material. *See* 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.").[1] It is, furthermore, consistent with Wagging Tails' registration certificate with the U.S. Copyright Office, which states that ownership is based on "written assignment" [*see* ECF 1-4].

"Material" is defined by the CofE as including "all literary and artistic material of every type and nature written, created, or furnished by Artist in connection with or relating to the Picture." [ECF 1-1, ¶ 1(d).] This definition

---

[1] Prospective assignments of materials not yet created – as contemplated by the CofE – are commonplace, particularly in the film industry. The Copyright Act does not prohibit such assignments.

7

encompasses the Director's Statement and, by extension, the Additional Director's Statement, which both clearly constitute "literary" material "in connection with or relating to the Picture." Indeed, to the extent Defendant ever claimed or claims otherwise, he would breach the CofE.

*Third*, the Director's Statement is a derivative work. Wagging Tails owns the copyright to the Picture and screenplay. [ECF 1-2, 1-3]). Defendant's creation and publication of the Director's Statement and Additional Director's Statement constitute unauthorized and infringing derivative works of the Picture.

A "derivative work" is "a work based upon one or more preexisting works," and broadly includes "any other form in which a work may be recast, transformed, or adapted," including with respect to "annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. These derivative rights encompass related projects such as sequels and prequels. *See, e.g., Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998) (Copyright owners have "the right to create sequels."); NIMMER ON COPYRIGHT § 2.12 at 2–178.31 to 2–178.32 (rev. ed. 2009) ("Subsequent works in a series (or sequels) are in a sense derivative works…."). They naturally extend to "making of" or "behind-the-scenes" works, such as the Director's Statement, which discuss Defendant's perspective on the substance, meaning, and message of the film and his take on what transpired during the creation of the Picture (however misguided his perspectives may be).

Moreover, many of the statements in the Director's Statement are not "opinions about the Picture and allegations of misconduct . . . behind the scenes." ECF 31 at 17. They are fictional statements, drawn from and mirroring the themes of abuse explored in the Picture, using the same characters. In effect, the Director's Statement is a treatment for Defendant's planned Derivative Work, which Defendant has told Wagging Tails he is publishing. [*See, e.g.,* ECF 1 at ¶¶ 31-33, 54, 69]. The Additional Director's Statement constitutes a second treatment for this

new unauthorized related movie.

## 2. Defendant Has Not Engaged In Fair Use

The Court stated: "To the extent the Director's Statement [and presumably, by extension, Additional Director's Statement] criticize[] the Picture, it would be protected by the fair use doctrine." ECF 31 at 16. The Court, however, did not address the four-factor test required under 17 U.S.C. § 107: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *See Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1171 (9th Cir. 2012). That analysis favors Wagging Tails.

Under the first factor, the original and amended Director's Statements are not transformative of the Picture. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (purpose of the first factor is to determine whether the alleged infringing work "supersedes the objects" of the original work "or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message"). They purport to tell a story of behind-the-scenes events that mirror the substantive elements and message of the film, using the same characters. They are a pitch for a sequel or a related, behind-the-scenes film, to be created for commercial purposes, *i.e.*, to secure funding. [*See* ECF 1, ¶ 38, 49, 69]. These facts weigh heavily against a finding of fair use. *See Harper & Row Pub., Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985).

Under the second factor, the underlying copyrighted Picture and screenplay are inherently creative, rather than factual, which disfavors a finding of fair use for an unauthorized derivative work. *See Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992).

The third factor shows that Defendant used the same characters as the

9

original, and the same themes, as shown by his movie poster.

Under the fourth factor, Defendant is impinging on the market for "making of" or "behind-the-scenes" works. Wagging Tails has the exclusive right to make and monetize any such work, or to license third-party producers, writers, and directors to create such works. There is an established market for such works—as evidenced, at least in part, by Defendant's own repeated statements that he was making such a film [*See, e.g.,* ECF 1, ¶¶ 32-34, 38, 49, 69; ECF 29-14; ECF 29-25]. *See, also*, *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022) (fourth factor considers adverse impact on potential market for derivative works).

### 3. Defendant Cannot Profit From The Unauthorized Work

The same analysis applies with equal, if not greater, force to the threatened release of Defendant's new "making-of-*Runt*" work. [ECF 1, ¶¶ 32-34.]

*First*, in the CofE, Coakley assigned his rights to "all literary and artistic material of every type and nature written, created, or furnished by Artist in connection with or relating to the Picture." Coakley's new work falls squarely within that definition.

*Second*, Coakley's new work will be a derivative work, a making-of-*Runt* film, "based upon one or more preexisting works," in a "form in which [*Runt*] may be recast, transformed, or adapted," including "annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. The release of such a movie would infringe Wagging Tails' rights to create "making of" or "behind-the-scenes" documentaries, and would necessarily incorporate protected elements of the Picture (such as still images/screen shots, short clips, behind-the-scenes footage of the filming process, and/or excerpts from the final Picture or screenplay) to serve its purpose.

*Third*, the audiovisual work is likely to incorporate protected elements of the Picture or screenplay. Coakley has already published at least one movie poster using photos from *Runt*, [ECF 29-10], which includes a copyrighted image owned

by Wagging Tails of Cameron Boyce and Nicole Berger from *Runt*.

*Fourth*, for the reasons stated above, the new film would not constitute fair use.

## IV. INJUNCTIVE RELIEF IS WARRANTED

### A. Plaintiff Would Suffer Irreparable Harm Absent An Injunction

The Court questioned Plaintiff's showing of irreparable harm arising from the disclosure of "the identities of the ultimate principals of Producer and financiers of the Picture[.]" ECF 31 at 14 (quoting the NDA), *see id*. at 15 ("Nor does Plaintiff adequately explain what harm it would suffer from such a disclosure[]"). Such harm arises in two ways:

First, disclosure could enable would-be film makers to inundate Wagging Tails and its principals with unsolicited and unwanted requests for money to finance films. The avoidance of such requests provides, in the Court's words, "a protectable business interest after release of the Picture." [ECF 31 at 14.]

Second, disclosure could reveal a relationship between the financiers and other film-industry participants, such as actors, directors or producers. Such a relationship could damage the marketability of such participants. For example: Assume that Producer P seeks to hire a director and cast members for a new film. Producer P, however, learns that Actor A and/or Director B work exclusively, or nearly exclusively, on films financed by Financier X. Producer P could then conclude that Actor A and/or Director B lack broad, industry-wide appeal and could then decide not to employ Actor A and/or Director B, which would ultimately harm Wagging Tails and the success of its films.

Wagging Tails has a business interest in protecting and promoting the careers of *Runt*'s cast, producer, and others involved. When they flourish, *Runt* attracts more viewers, now and in the future. If they lose marketability or credibility, *Runt* would attract fewer viewers, now and in the future. Such harm extends beyond "the Berger family," [ECF 31 at 14], to Wagging Tails, which, as owner of *Runt*, suffers

"related or corresponding harm . . . due to these disclosures." *Id.*

### B. The Relief Sought Does Not Violate Public Policy

The gravamen of the claims in this case is the ownership (and therefore, the right to register) a story about a ***fictionalized account*** of sexual abuse and acts of revenge and vigilantism related to Cameron Boyce, Nicole Berger, and the movie *Runt*. The Order states that "California has a strong policy against covenants to restrict future sexual harassment and other illegal conduct. New York law also prohibits such covenants." [ECF 31 at p.11; *see also id.* at 17.] This case, however, implicates no such policy and no restriction of disclosures of factual acts of abuse. There is no evidence of abuse, let alone a coverup. Coakley's treatment is fiction, as all the witness statements before the Court demonstrate. [*See, e.g.,* ECF 31 at n.8.]

Wagging Tails does not dispute that recently enacted laws limit the types of information that can be restricted in settlement agreements. For example, recently amended section 1002(a) of the California Code of Civil Procedure provides that "a provision within a settlement agreement that prevents the disclosure of ***factual information*** related to the action is prohibited in any civil action the ***factual foundation*** for which establishes a cause of action for civil damages for any of the following . . . [sexual abuse]." (Emphasis added.) The NDA, however, is not a settlement agreement, and does not prevent factual disclosures of sexual abuse.

Coakley, moreover, was represented by counsel in connection with the CofE. [*See, e.g.,* ECF 12-5 (Bimbler Decl.), ¶ 6; ECF 29-4, ¶ 7 (same).] To the extent that the Court considered whether employment law might apply, the Court correctly concluded that it does not.

### C. An Injunction Would Not Impose An Impermissible Prior Restraint

The project at issue here involves commercial speech (a movie to be made for profit), which is misleading (in that it tells a purported story about the making of *Runt* that is a fictionalized mirror of the movie). Commercial speech receives "lesser protection . . . than . . . other constitutionally guaranteed expression. . . .

[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it. . . ." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562-63 (1980) (internal citations omitted).

Misleading speech may also be enjoined under California's unfair competition law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL"), whether or not the business practice violates any other law. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949-50. Coakley's message is misleading, because it is a fictionalized account of abuse and vigilantism that mirrors the themes of *Runt* but will be presented as fact.

Similarly, defamatory speech can be enjoined. *See, e.g., Balboa Island Vill. Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1155-56 (2007) ("[W]e hold that, following a trial at which it is determined that the defendant defamed the plaintiff, the court may issue an injunction prohibiting the defendant from repeating the statements determined to be defamatory.") Accordingly, "once a court has found that a specific pattern of speech is unlawful, an injunctive order prohibiting the repetition, perpetuation, or continuation of that practice is not a prohibited 'prior restraint' of speech." *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 140 (1999).

Here, the only evidence in the record shows that there was no abuse on the set. Coakley has not appeared to challenge that evidence. The First Amendment establishes no bar against an injunction preventing Coakley from using the same themes and same characters as in *Runt*, and their photographs, in his new project. It is misleading, and the First Amendment does not protect speech that is "likely to deceive." *In re R. M. J.*, 455 U.S. 191, 202, 102 S. Ct. 929, 937 (1982).

Coakley, moreover, waived any First Amendment rights. "[W]here parties to a contract [here, the NDA and CofE] agree to restrictions on speech, those restrictions are generally upheld." *Nat'l Abortion Fed'n* at *59. An "NDA is not a restriction on speech at all, but a waiver of [the party's] right to disseminate or

speak about" certain information. *Ostergren v. Frick*, No. 1:19-cv-139, 2020 U.S. Dist. LEXIS 54699, at *17 (W.D. Mich. Mar. 30, 2020). "That a confidentiality provision is broad does not mean it is unenforceable." *Nat'l Abortion Fed'n*, at *49.

Here, in the NDA and CofE, Coakley waived any First Amendment rights that he may have otherwise had to identify the financiers of *Runt*, and to disclose special effects used in the making of the film, and he agreed that Wagging Tails may register the copyright of a work by Coakley based on *Runt*. Rights like those are typically addressed in contracts for creative works like movies:

> In *In re Steinberg*, 148 Cal.App.3d 14, 20 (1983), the court recognized that a movie maker had a First Amendment right to disseminate his movie, but that this right was limited by his agreement to submit the final version of the movie to the juvenile court for editing. In *Erie Telecommunications, Inc. v. City of Erie, Pa.*, 853 F.2d 1084, 1094-1101 (3d Cir. 1988) a cable television franchisee was held under federal law to have voluntarily, knowingly, and intelligently waived its First Amendment rights by an agreement with the franchisor.

*ITT Telecom Prods. Corp. v. Dooley*, 214 Cal. App. 3d 307, 319 (1989).

Here, too, Coakley has contractually agreed to be bound by the NDA and the CofE. To the extent that Coakley would otherwise have had a free speech right to disclose information about the financing of *Runt*, he waived it when he signed the NDA. To the extent that Coakley otherwise had a right to create a fictional story of abuse on the set of the making of a movie, he sold that story though the CofE.

If Coakley really had evidence of unlawful activities on the set of *Runt*, Wagging Tails would have no objection to Coakley disclosing it to the appropriate authorities, and has repeatedly encouraged him to do so. In the years since the film's release, however, Coakley has never done that, which warrants the strong inference that he has no such information and is merely creating a fictional commercial work. "Defendants' purported desire to disclose [certain] recordings to law enforcement does not obviate the confidentiality agreements for all purposes. At most, defendants might have a defense to a breach of contract claim based on

production of [those] materials to law enforcement." *Nat'l Abortion Fed.* at *71-72. Permitting disclosures of factual allegations of abuse to the authorities would serve the public interest, while holding Coakley to his contractual agreements. *Cf. Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991) ("the First Amendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law.").

Finally, Coakley has no First Amendment right that trumps Wagging Tails' rights under the Copyright Act, which, through the fair use doctrine, provides a built-in First Amendment safety valve. *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001). Therefore, "uses of copyrighted material that are not fair uses are rightfully enjoined." *Id.* (citing *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir.1997) (rejecting contention that injunction would constitute a prior restraint in violation of First Amendment)).

Wagging Tails, furthermore, never sought a "prospective, perpetual waiver" of all of Defendant's First Amendment rights, or to ensure "silence" relating to the Picture. [ECF 31 at 16.] Nor did Wagging Tails ask Defendant to waive his rights under the fair use doctrine. Wagging Tails seeks merely to enforce the NDA and its exclusive ownership rights, arising under contract and copyright laws, in and to the Picture and derivatives thereof.

## V. CONCLUSION

For the foregoing reasons, Wagging Tails respectfully requests that the Court grant the MDJ in its entirety. If the Court finds that the MDJ cannot be granted, then Wagging Tails requests leave to amend the Complaint and/or to respond to any additional issues raised by the Court.

DATED: February 28, 2023         BLANK ROME LLP

                                 By: */s/ Jeffrey Rosenfeld*
                                     Jeffrey Rosenfeld
                                     Attorneys for Plaintiff
                                     Wagging Tails Productions, Inc.

15
WAGGING TAILS' SUPPLEMENT TO ECF-29 AND RESPONSE TO ECF 31
165319.00602/130661023v.9

# CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Wagging Tails Productions, Inc., certifies that this brief contains 5,813 words, which complies with the word limit of L.R. 11-61.

DATED: February 28, 2023

*/s/ Jeffrey Rosenfeld*
Jeffrey Rosenfeld